UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

THE CITY OF NEW YORK,

                        Plaintiff,

           -against-

AXIS INSURANCE COMPANY,

                        Defendant.

------------------------------------------------------------------------x

**COMPLAINT**

Civil Action No. 22-cv-3220

Plaintiff the City of New York (the "City"), by its attorney, Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, alleges upon personal knowledge as to itself and upon information and belief as to all other matters:

## INTRODUCTION

1. This is an action for a declaration that defendant AXIS Insurance Company ("AXIS") has a duty to defend the City in the personal injury action captioned *Silver Cruz v. The City of New York, The Brooklyn Union Gas Company d/b/a National Grid, Keyspan Energy d/b/a National Grid and National Grid Energy Management, LLC, and New York Paving, Inc.*, filed in New York Supreme Court, Kings County, Index No. 505333/2018 (the "*Cruz* Action") and must reimburse the City for all costs it has incurred defending itself in the *Cruz* Action since the City tendered its defense to AXIS in July 2021.

## PARTIES

2. The City of New York is a municipal corporation organized pursuant to the laws of the State of New York.

3. AXIS is an insurance company with a principal place of business at 10000 Avalon Blvd., Suite 200, Alpharetta, GA 30009. AXIS is licensed to transact and engages in the business of insurance in the State of New York.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the plaintiff and the defendant are corporations formed under the laws of different states with their principal places of business in different states and the amount in controversy exceeds $75,000 excluding interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claims occurred in the district.

## FACTS

**A. The City's Contract with Perfetto Enterprises Company, Inc.**

6. In 2017, the City and Perfetto Enterprises Company, Inc. ("Perfetto") entered into a contract for "The Reconstruction of Collapsed or Otherwise Defective Storm, Sanitary or Combined Vitrified Clay Pipe Sewers" in various locations in Brooklyn. The contract obligated Perfetto to maintain commercial general liability insurance in an amount of at least $3 million per occurrence and $6 million in project aggregate, covering "claims for . . . bodily injury, including death, which may arise from any of the operations under this **Contract**." The contract required Perfetto's insurance policy to "name the **City** as an Additional Insured."

**B. Perfetto's Permits with the City**

7. In September and October 2017, Perfetto obtained at least three street opening permits from the New York City Department of Transportation ("DOT"). The permits allowed Perfetto to "open the roadway and/or sidewalk" on or around 19th avenue and 76th street

in Brooklyn, as part of the company's work under its contract with the City.  Each permit lasted around one month.

8. Each permit contained the following language: "Permittee shall comply with all applicable laws, rules and specifications of the New York City Department of Transportation and with the Terms and Conditions of the Permit."

9. A statement on each permit read as follows: "Permit Accepted By Permittee On [the applicable date]."

10. At the time Perfetto accepted each permit, DOT's Bureau of Highway Operations rules and regulations required permit applicants to obtain a commercial general liability insurance policy of at least $1 million per occurrence in which the City is named as an additional insured.  34 R.C.N.Y. § 2-02(a)(3)(i)(E), (F) (2017).  The Highway Rules further provided that the policy needed to "protect the City . . . and the applicant from claims for . . . bodily injury . . . which may arise from any operations performed by or on behalf of the applicant for which [DOT] has issued it a permit"; "provide coverage at least as broad as that provided by the most recent edition of ISO Form CG 0001"; "provide coverage for completed operations"; "provide that the City and its officials and employees are Additional Insureds with coverage at least as broad as set forth in ISO Form CG 2026 (11/85 ed.)"; and "provide that the limit of coverage applicable to the Named Insured is equally applicable to the City as Additional Insured."  34 R.C.N.Y. § 2-02(a)(3)(i)(B), (C), (F), (G) (2017).

11. Accordingly, the Contract and the permits each required Perfetto to procure insurance covering the City, including coverage for the permitted activity and completed operations.

### C. Perfetto Purchases an Insurance Policy from AXIS, Naming the City as an Additional Insured

12. Perfetto purchased from AXIS a general liability insurance policy, number P00100000091801, effective January 29, 2017 to January 29, 2018 (the "Insurance Policy" or "Policy").

13. Perfetto is a named insured under the Policy.

14. The City is an additional insured under the Policy.

### D. The Facts of the *Cruz* Action

15. In late November 2017, Silver Cruz filed a notice of claim against the City. As relevant here, he alleged that on November 2, 2017, he was walking on 76th street in Brooklyn towards his school, P.S. 186 (which is located on 19th avenue), when he "fell into a ditch that was located in the middle of the sidewalk[.]" He attributed the accident to the "negligence and carelessness of the City of New York; their agents, servants or employees; in the . . . ownership, operation, maintenance, management, inspection and control of the aforesaid sidewalk."

16. In March 2018, Cruz filed a complaint against the City, largely reiterating the allegations in his notice of claim. He amended his complaint in June 2018, adding various defendants,[1] and then amended his complaint a second time in July 2019, adding yet another defendant.[2] In his second amended complaint, he alleged the following:

    (a)    At all relevant times, the defendants controlled, operated, maintained, repaired, and managed the sidewalk "at or near 7601 19th Avenue" in

---

[1] In particular, he added the following defendants: The Brooklyn Union Gas Company d/b/a National Grid; Keyspan Energy d/b/a National Grid; and National Grid Energy Management, LLC.

[2] The new defendant was New York Paving, Inc.

> Brooklyn, New York (*Cruz* Second Amended Compl. ¶¶ 7–13, 21–27, 38–43, 54–59, 72–75);

(b) On the date of the incident, he was "lawfully at the aforementioned premises" when he slipped, fell, and was injured (*id.* ¶ 14); and

(c) The accident was caused by the defendants' negligence in the ownership, construction, renovation, repair, control, maintenance, management, supervision, inspection and operation of the sidewalk (*id.* ¶¶ 15, 31, 47, 63, 79).

17. The address identified in the second amended complaint—specifically, 7601 19th avenue in Brooklyn—is located on 19th avenue, right off 76th street. Accordingly, it is the precise location at which Perfetto performed construction work pursuant to its DOT permits.

18. Because Cruz's alleged injury occurred at the location where Perfetto performed construction work under its contract with the City, the *Cruz* complaint triggered AXIS's duty to defend the City as an additional insured, as per the provisions of Perfetto's Insurance Policy.

**E.     The City's Tender of Defense of the *Cruz* Action and AXIS's Wrongful Failure and Refusal to Defend the City**

19. By email sent on July 2, 2021, the City tendered the defense of the *Cruz* Action by notifying AXIS of the City's receipt of the *Cruz* complaints and demanding a defense under Perfetto's insurance policy. The City's tender letter attached a copy of all three *Cruz* complaints, Perfetto's certificate of insurance, and excerpts from Perfetto's contract with the City, including the insurance, indemnification, and signature pages.

20. Over the next seven months, AXIS sent various emails requesting additional information and documentation. In response, the City promptly provided the notice of claim, the entire contract, and copies of Perfetto's DOT permits.

21. While AXIS's lengthy review was ongoing, the City sent multiple emails reiterating its demand for a defense and asking for a response to its tender.

22. Finally, by letter dated February 10, 2022—more than seven months after the City's tender—AXIS disclaimed its duty to defend. AXIS conceded that the City was an additional insured "with respect to liability caused by [Perfetto's] ongoing operations and completed operations for [the City]." Nonetheless, AXIS refused to defend the City on the ground that AXIS could not "confirm if the incident was caused by, or occurred in connection with the scope of Perfetto's work, execution of the work, and operations performed."

23. By email dated March 1, 2022, the City responded that AXIS's disclaimer was both "untimely" and "improper." The City explained that the DOT permits "place . . . [Perfetto] at the loss location just [a] few days before the accident," triggering the duty to defend. The City further explained that "an insurers' [sic] duty to defend is broader than its duty to indemnify" and that here, the City had sought "defense only."

24. By letter dated March 7, 2022, AXIS again disclaimed its defense obligations. For the first time, AXIS stated that it was denying the tender "due to [the City's] failure to provide AXIS with timely notice of claim[.]" AXIS did not explain why it had waited *over eight months* to raise this late-notice objection. Indeed, the City's July 2, 2021 tender attached copies of the *Cruz* complaints—each of which was dated, showed the 2018 docket number, and specifically stated that a notice of claim had been filed in November 2017. Clearly, AXIS could have made a late-notice objection immediately upon receiving the City's tender. Yet AXIS utterly failed to do so, instead waiting over eight months before raising the issue.

25. By email dated March 8, 2022, the City "rejected" AXIS's second disclaimer.

26. To date, AXIS has not defended the City in the *Cruz* Action.

    **F.**    **AXIS's Liability as to the *Cruz* Action**

27.    As a result of AXIS's wrongful failure to defend the City in the *Cruz* Action, the City has incurred, or will incur, costs and expenses in excess of $75,000 defending itself through the New York City Law Department (the "Law Department").

**FIRST CAUSE OF ACTION – DECLARATION OF DUTY TO DEFEND**

28.    The City repeats and realleges paragraphs 1 to 27, as if fully set forth herein.

29.    Despite the demand that AXIS defend the City in the *Cruz* Action, AXIS has failed and refused to do so.

30.    AXIS's failure to defend the City in the *Cruz* Action violates the Policy and the law.

31.    Therefore, there is an actual, justiciable controversy between the City and AXIS as to whether, under the Insurance Policy, AXIS is obligated to defend the City in the *Cruz* Action. A judicial declaration that AXIS is obligated to defend the City is necessary because, as a result of AXIS's wrongful failure to accept the City's tender of defense, the City has been and will be forced to incur costs and expenses in providing its own defense.

**SECOND CAUSE OF ACTION — RECOVERY OF DEFENSE COSTS**

32.    The City repeats and realleges paragraphs 1 to 27, as if fully set forth herein.

33.    Beginning no later than the City's July 2, 2021 demand for a defense in the *Cruz* Action, AXIS was obligated to defend the City.

34.    Despite the City's demand for a defense, AXIS has failed and refused to defend the City.

35. When an insurance carrier wrongfully refuses its defense obligation, the Law Department charges the carrier $350 an hour for attorney time and $100 an hour for paralegal time.

36. Therefore, AXIS is liable for the City's defense costs in the *Cruz* Action beginning no later than July 2, 2021 through the time, if any, that AXIS provides a defense. The applicable rate is $350 an hour for attorney time and $100 an hour for paralegal time, plus out-of-pocket costs. Pursuant to CPLR 5001 and 5004, prejudgment interest shall accrue from the respective dates the City expended such attorney and paralegal time or incurred such out-of-pocket costs.

**WHEREFORE**, the City demands judgment:

(a) On the First Cause of Action, declaring that AXIS is obligated under the Policy to defend the City in the *Cruz* Action;

(b) On the Second Cause of Action, against AXIS for attorneys' fees and expenses relating to the City's defense of the *Cruz* Action, at the rate of $350 per hour for attorney time and $100 per hour for paralegal time plus out-of-pocket expenses and interest, from no later than July 2, 2021 through the time that AXIS provides a defense of the *Cruz* Action, in an amount to be proven at trial;


(c) For such other relief as this Court may deem just and proper.

Dated: New York, New York
April 20, 2022

        Honorable Sylvia O. Hinds-Radix
        Corporation Counsel of the
          City of New York
        *Attorneys for Plaintiff the City of New York*

By: _____
      Otis Comorau
      Assistant Corporation Counsel
      100 Church Street
      New York, NY 10007
      (212) 356-2295
      ocomorau@law.nyc.gov